ORIGINAL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAY 2 7 2014

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>   Plaintiff,<br><br>        v.<br><br>WILLIAMS, SCOTT & ASSOCIATES, LLC,<br><br>WSA, LLC, also d/b/a Warrant Services Association, a Nevada limited liability company, and<br><br>JOHN WILLIAMS, individually and as officer of Williams, Scott & Associates, LLC, and as manager of WSA, LLC<br><br>        Defendants. | Case No. 1:14-CV-1599 |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER WITH AN ASSET FREEZE, APPOINTMENT OF RECEIVER, AND OTHER EQUITABLE RELIEF, AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

i

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................1

II.     THE PARTIES.......................................................................................2

        A.      FEDERAL TRADE COMMISSION ....................................................2

        B.      DEFENDANTS ..................................................................................3

III.    DEFENDANTS' DECEPTIVE AND ABUSIVE COLLECTION
        PRACTICES .........................................................................................4

IV.     THIS COURT HAS THE AUTHORITY TO GRANT THE RELIEF ...........7

V.      ENTRY OF A TEMPORARY RESTRAINING ORDER AND
        PRELIMINARY INJUNCTION IS APPROPRIATE.......................................8

        A.      The FTC has demonstrated a likelihood of success on the
                merits. ......................................................................................9

                1.      False, Deceptive, or Misleading Representations in
                        Violation of Section 5 of the FTC Act and Section 807
                        (Counts I & V)..............................................................10

                2.      Defendants Engage in Prohibited Communications with
                        Consumers  (Counts II & IV)........................................15

                3.      Defendants Engage in Prohibited Communications with
                        Third Parties (Counts III) .............................................17

                4.      Defendants Fail to Make Required Disclosures in Their
                        Collection Calls or Fail to Provide Consumers with a
                        Validation Notice  (Counts V&VI)..............................17

        B.      The balance of equities mandates a temporary restraining order
                and preliminary injunction...........................................................19

        C.      The Individual Defendant Is Liable for Injunctive and Equitable
                Monetary Relief ...........................................................................20

VI.     A TRO WITH INJUNCTIVE AND OTHER RELIEF IS
        NECESSARY ........................................................................................23

VII.    CONCLUSION......................................................................................25

ii

# TABLE OF AUTHORITIES

## Reported Cases

CFTC v. Hunt, 591 F.2d 1211 (7th Cir. 1979) ........................................................ 20

CFTC v. Hunter Wise Commodities, LLC, 2013 U.S. Dist. LEXIS 35770 (S.D. Fla. 2013) ............................................................................................................... 20

Edwards v. Niagra Credit Solutions, Inc., 586 F. Supp. 2d 1346 (N.D. Ga. 2008), aff'd on other grounds, 584 F.3d 1350 (11th Cir. 2009) ..................................... 18

Franklin v. Dean, 2013 U.S. Dist. LEXIS 63907 (M.D. Ala. May 3, 2013) .......... 18

FTC v. Affordable Media, LLC, 179 F.3d 1228 (9th Cir. 1999) ............................ 22

FTC v. Amn. Urological Corp., No. 98-2199 (N.D. Ga. Aug. 3, 1998) .................. 8

FTC v. Amy Travel Serv., Inc., 875 F.2d 564 (7th Cir. 1989) ............................... 21

FTC v. Atlantex Assoc., 1987 U.S. Dist. LEXIS 10911 (S.D. Fla. Nov. 25, 1987) .................................................................................................................................. 21

FTC v. Career Info. Serv., No. 1:96-CV-1464, 1996 U.S. Dist. LEXIS 21207 (N.D. Ga. June 21, 1996) ............................................................................................... 9

FTC v. Charles Dunlevy, No. 1:11-CV-1226 (N.D. Ga. April 15, 2011) ............... 8

FTC v. Direct Connection Consulting, Inc., No. 08-1739 (N.D. Ga. May 14, 2008) .................................................................................................................................... 8

FTC v. Engle, No. 03-1072 (N.D. Ga. Apr. 23, 2003) ........................................... 8

FTC v. Figgie Int'l, Inc., 994 F.2d 595 (9th Cir. 1993) ......................................... 11

FTC v. Five-Star Auto Club, 97 F. Supp. 2d 502 (S.D.N.Y. 2000) ....................... 21

FTC v. Gem Merch. Corp., 87 F.3d 469 (11th Cir. 1996) ....................... 7, 8, 21, 24

FTC v. H.N. Singer, Inc., 668 F.2d 1107 (9th Cir. 1982) ....................................... 8

FTC v. Holiday Enter., Inc., 2008 U.S. Dist. LEXIS 35858 (N.D. Ga. Feb. 5, 2008) ............................................................................................................................. 8, 10

FTC v. IAB Mktg., 2014 U.S. App. LEXIS 5679 (March 27, 2014) ....... 8, 9, 21, 24

FTC v. Landers, No. 00-1582 (N.D. Ga. June 23, 2000) ......................................... 8

FTC v. MJS Fin. Servs., Inc., No. 97-3087 (N.D. Ga. Oct. 9, 1997) ...................... 8

FTC v. Nat'l Urological Grp, Inc., 645 F. Supp. 2d 1167 (N.D. Ga. 2008), aff'd 356 Fed. Appx. 358 (11th Cir. 2009) ................................................................. 10

FTC v. Pinnacle Mktg, No.  1:13-cv-03455 (N.D. Ga. Oct. 21, 2013) ................... 8

FTC v. Prophet 3H, Inc., No. 06-1692 (N.D. Ga. July 18, 2006)............................ 8

FTC v. SlimAmerica, Inc., 77 F. Supp. 2d 1263 (S.D. Fla. 1999) ......................... 11

FTC v. Southwest Sunsites, Inc., 665 F.2d 711 (5th Cir. 1982) ............................. 20

FTC v. Stewart Fin. Co., No. 03-2648 (N.D. Ga. Sept. 12, 2003)............................ 8

FTC v. Tashman, 318 F.3d 1273 (11th Cir. 2003)............................................... 8, 10

FTC v. U.S. Oil & Gas Corp., 748 F.2d 1431 (11th Cir. 1984)................ 7, 8, 24, 25

FTC v. U.S. Work Alliance, No. 08-2053 (N.D. Ga. July 8, 2008) ......................... 8

FTC v. U.S.A. Beverages, Inc., 2005 U.S. Dist. LEXIS 39042 (S.D. Fla. Nov. 4, 2005).................................................................................................................... 7

FTC v. USA Financ., LLC, No. 10-212152, 2011 U.S. App. LEXIS 3774 (11th Cir. Feb. 25, 2011) ................................................................................................ 8

FTC v. USA Fin., LLC, 415 Fed. Appx. 970, 974-75 (11th Cir. Feb. 25, 2011) .. 10, 21

FTC v. Warner Communications, 742 F.2d 1156 (9th Cir. 1984)............................ 9

FTC v. Windward Mktg. Ltd., 1997 U.S. Dist. LEXIS 17114 (N.D. Ga. Sept. 30, 1997).......................................................................................... 10, 11, 21, 22

FTC v. World Travel Vacation Brokers, 861 F.2d 1020 (7th Cir. 1988) ............... 20

FTC v. World Wide Factors, Ltd., 882 F.2d 344 (9th Cir. 1989)....................... 9, 19

Gibson v. Rosenthal, Stein, & Assocs., LLC, 2013 U.S. Dist. LEXIS 94216 (N.D. Ga. May 13, 2013) ......................................................................................... 18

SEC v. ETS Payphones, Inc., 408 F.3d 727  (11th Cir.2005)................................. 24

Standard Educators, Inc. v. FTC, 475 F.2d 401 (D.C. Cir. 1973) ......................... 21

Terrell v. Prosperity Fin. Solutions, Inc., 2013 U.S. Dist. LEXIS 90024 (N.D. Ga.  Mar. 26, 2013) .......................................................................................... 18

U.S. v. Blue Ribbon Smoked Fish, 179 F. Supp. 2d 30 (E.D.N.Y. 2001).............. 20

U.S. v. Diapulse Corp. of Am., 457 F.2d 25 (2d Cir. 1972)................................... 20

## <u>Statutes</u>

15 U.S.C. § 1692(a) ................................................................................. 17

15 U.S.C. § 1692c(b) ............................................................................... 17

15 U.S.C. § 1692d(5) .............................................................................. 16

15 U.S.C. § 1692e(11) ............................................................................. 18

15 U.S.C. § 1692g(a) ............................................................................... 19

15 U.S.C. § 1692l(a) .................................................................................. 3

15 U.S.C. § 45 (a) .................................................................... 1, 2, 9, 10

15 U.S.C. § 53(b) .............................................. 3, 7, 8, 9, 11, 20, 25

15 U.S.C. §§ 1692 – 1692p ................................................................ 1, 3

15 U.S.C. §§ 48 – 51 .................................................................................. 2

15 U.S.C. 1692e ...................................................................................... 14

FDCPA, Section 805(a) .................................................................... 15, 16

FDCPA, Section 805(b) ........................................................................... 17

FDCPA, Section 806(2) .................................................................... 16, 17

FDCPA, Section 806(5) .................................................................... 16, 17

FDCPA, Section 807 ............................................................................... 14

FDCPA, Section 807(1) ........................................................................... 15

FDCPA, Section 807(2)(A) ..................................................................... 15

FDCPA, Section 807(3) ........................................................................... 15

FDCPA, Section 807(4) ........................................................................... 15

FDCPA, Section 807(5) ........................................................................... 15

FDCPA, Section 807(7) ........................................................................... 15

FDCPA, Section 807(10) ......................................................................... 15

FDCPA, Section 807(11) .................................................................... 18, 19

FDCPA, Section 809(a) ...................................................................... 18, 19

FDCPA, Section 814(a)................................................................................................ 3

## **Other Authorities**

S. Rep. No. 382, 95th Cong., 1st Sess. 4, at 4, *reprinted in* 1977 U.S.C.C.A.N.
1695....................................................................................................................... 19

## I.   INTRODUCTION

Plaintiff, the Federal Trade Commission ("FTC"), is bringing this action against Williams, Scott & Associates, LLC; WSA, LLC; and John Williams, a principal of both corporations, to halt a deceptive shake-down style debt collection scheme victimizing consumers nationwide.  Since at least 2010 Defendants have been engaged in a fraudulent debt collection scheme to coerce consumers into paying sometimes hundreds or thousands of dollars for debts that consumers either do not owe or that Defendants have no authority to collect.  Defendants' scheme has bilked thousands of consumers out of more than $4 million.

Hundreds of consumer complaints have amassed[1] and Defendants have received notice of many of these complaints, yet they have continued their wrongful acts unabated.  Defendants' unfair, deceptive and abusive collection tactics violate Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45 (a), and multiple provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 – 1692p.

In order to stop Defendants' bad acts and to preserve the court's ability to provide full and effective relief, including redress to injured consumers, Plaintiff asks that this court enter the attached proposed *ex parte* temporary restraining order.

---

[1] PX01 at 2,7¶¶5,13; PX02 at 1¶4; PX03-16, PX19-PX20.

The TRO enjoins Defendants' deceptive and abusive practices, freezes Defendants' assets, appoints a temporary receiver over the corporate Defendants, and provides immediate access to the Defendants' business premises. Plaintiff's motion is supported by sworn declarations of 15 consumers that detail Defendants' fraudulent collection practices, as well as a declaration from an FTC investigator providing a summary chart of over 500 complaints filed by consumers against Defendants. In addition, Plaintiff submits declarations from a State of Georgia investigator, the State Bar of Georgia, a payment processor, and a payday loan company that further evidence the deceptive misrepresentations and unlawful practices engaged in by Defendants. [2]

The overwhelming evidence submitted herewith establishes Defendants unlawful conduct, demonstrates the significant injury sustained by consumers who have lost approximately $4 million as a result of Defendants' fraudulent collection scheme, and supports the need for immediate injunctive and other equitable relief.

## II.    THE PARTIES

### A. FEDERAL TRADE COMMISSION

Plaintiff  FTC is an independent agency of the United States government created by the FTC Act, 15 U.S.C. §§ 48 – 51.  The FTC enforces Section 5(a) of

---

[2] In support of the instant motion, the FTC submits Volume I (declarations and evidence), hereinafter ("PX #, at page# ¶#"), and Volume II (legal authority).

the FTC Act, 15 U.S.C. § 45 (a), which prohibits unfair and deceptive acts and

practices in or affecting commerce, and the FDCPA, 15 U.S.C. §§ 1692 – 1692p,

which prohibits unfair, deceptive, and abusive debt collection practices.  Section

13(b) of the FTC Act, 15 U.S.C. § 53(b), and Section 814(a) of the FDCPA, 15

U.S.C. § 1692l(a), authorize the FTC, through its own attorneys, to initiate federal

court proceedings to enjoin violations of the FTC Act and the FDCPA and to secure

such equitable relief as may be appropriate in each case, including consumer redress

and disgorgement of ill-gotten gains.

### B. DEFENDANTS

**Williams, Scott & Associates, LLC** ("Williams Scott"), is a Georgia limited

liability company that since at least 2010 has been engaging in unlawful collection

tactics to strong-arm consumer victims into paying debts that they do not owe or for

which Defendants are not authorized to collect.  **WSA, LLC** ("WSA") is a Nevada

limited liability company[3] that also does business as "Warrant Services

Association."[4]  WSA engages in unlawful collection tactics similar to Williams

Scott.  Both companies appear to operate in Norcross, Georgia and use the name

WSA interchangeably when collecting debt.[5]  **John Williams** is the organizer,

---

[3] PX01 at 4,58-60¶7.

[4] PX01 at 6,102-112¶¶11-12; PX16 at 1,3,6,8¶¶2,7,8.

[5] PX01 at 4-5,67,73¶8; PX06 at 2,5¶5; PX07 at 5¶14; PX16 at 1,3¶¶2,7.

manager/member, and registered agent of both Williams Scott and WSA.[6]  He

controls the financial operations of the companies.[7]  Williams resides in Norcross,

Georgia.[8]

## III.   DEFENDANTS' DECEPTIVE AND ABUSIVE COLLECTION PRACTICES

Since at least 2010, Defendants have been engaged in a scheme to collect

debts from consumers that consumers do not owe or that Defendants have no

authority to collect.[9]  Defendants call consumers and systematically represent that

the consumers are delinquent on debts and insist consumers must pay them

immediately or face arrest, jail, and/or drivers' license suspension.[10]  To convince

consumers to pay money, Defendants often identify payday loan companies or other

creditors with whom the consumer owe debts.[11]  Defendants' representatives also

call armed with consumers' personal information such as social security numbers

---

[6] PX01 at 3-4,48-51¶¶6-7.

[7] PX01 at 4-5,86,90¶8.

[8] PX01 at 3-4,51¶6.

[9] PX01 at 2-3,9-45¶5; PX04 at 2-3¶6; PX05 at 2¶6; PX09 at 3¶8; PX14 at 1,3-4¶¶2-3,7; PX15 at 3¶8; PX16 at 3¶9; PX18 at 2¶¶6-8.

[10] PX01 at 2¶5; PX02 at 1¶4; PX03 at 1¶3; PX04 at 1¶3; PX05 at 1¶2; PX06 at 2¶4; PX 07 at 1-3,5-6¶¶4,8,15; PX08 at 1¶¶2-4; PX09 at 1-4¶¶3,10; PX10 at 1¶2; PX11 at 1-2¶3; PX12 at 1¶3; PX13 at 1-2¶4; PX14 at 1-2 ¶¶ 2-5; PX15 at 1-2,5,9-11¶¶2-3; PX16 at 2¶4; PX 19 at 1-2¶¶2,5; PX20; PX20 at 1-3¶¶4,8.

[11] PX04 at 1¶2; PX05 at 1¶4; PX08 at 1¶2; PX09 at 1¶2; PX10 at 1-2,6¶3; PX14 at 1¶2; PX15 at 1-2¶3; PX16 at 3¶7; PX20 at 2¶5.

and bank account information.  Because Defendants have such detailed information

consumers believe the calls are legitimate collection efforts.[12]

Defendants often use scare tactics to frighten consumers into paying money

by pretending to be affiliated with law enforcement officials, such as claiming to be

"an investigator for the Department of Justice," and "with the "DA's Office.""[13]

Similarly, in other numerous instances, Defendants pose as attorneys or as

employees of a law firm.[14] Defendants also frequently accuse consumers of

committing crimes, such as check fraud or theft by deception.[15]  Defendants further

fuel consumers' fear of an arrest by specifying particular places where they will be

arrested.[16]  For example, Defendants told one consumer that there was a warrant

officer on his way to her office to serve her with a bench warrant.[17]  In many

---

[12] PX06 at 1¶3; PX09 at 2¶4; PX10 at 1-2¶3; PX11 at 2¶4; PX19 at 2¶4; PX14 at 2 ¶5; PX20 at 2¶¶6-7.

[13] PX01 at 2-3,9-45¶5; PX02 at 1¶4; PX03 at 1¶¶2-3; PX06 at 2¶4; PX07 at 1,3-4¶¶4,8,10,12; PX10 at 1¶2; PX08 at 1¶¶2-3; PX09 at 1¶2; PX10 at 1¶2; PX12 at 1¶¶2-3; PX13 at 1¶2; PX15 at 1-2¶¶2,4; PX16 at 2,8¶¶4,8; PX20 at 1¶4.

[14] PX01 at 2-3,9-45¶5; PX04 at 1¶3; PX05 at 1¶2; PX06 at1¶2; PX10 at 1-2¶¶3,6; PX11 at 1,5¶¶2-3,13; PX13 at 1¶2; PX14 at 1-2,4 ¶¶4-5,9; PX15 at 1¶2; PX19 at 1¶2.

[15] PX01 at 2-3,6-7,9-45 ¶5; PX02 at 1-2¶4; PX03 at 1¶3; PX05 at 1¶2; PX07 at 1,3-4¶¶3,8,10; PX09 at 1-2 ¶¶2-3; PX10 at 1¶2; PX11 at 2¶4; PX14 at 1¶2; PX15 at 1-3 ¶¶2,6; PX16 at 2¶¶3-4; PX20 at 1¶¶4,9.

[16] PX05 at 3¶7; PX08 at 1¶4; PX11 at 2-3¶¶5-6; PX15 at 1-2 ¶3; PX20 at 3¶10.   .
[17] PX11 at 2-3¶¶5-6.

instances, Defendants also threaten consumers that failure to pay will result in other negative consequences such as suspension of consumers' driver's licenses.[18]

Defendants outright ignore the debt collection requirements of the FDCPA. Specifically, Defendants engage in harassing and abusive collection practices, including calling consumers at their workplaces when they know the calls are inconvenient or are prohibited by the consumers' employers.[19]  Defendants also use abusive or profane language or repeatedly contact consumers on their telephones, as a means of intimidating, abusing, or harassing consumers to convince them to pay the alleged debts.[20]

Defendants regularly call third parties, including co-workers, family and friends, and disclose information about the consumers' debts.[21]

Defendants also do not provide the requisite disclosures to consumers about the purported debts, including the amount of the debt owed, the name of the creditor, or that the consumer has the right to dispute the debt and receive

---

[18] PX01 at 2¶5; PX07 at 2¶5; PX09 at 1-2 ¶3; PX10 at 1¶2; PX12 at 1¶3; PX14 at 1¶2; PX15 at 1-2¶3; PX19 at 1¶2; PX20 at 1-2 ¶4.

[19] PX07 at 3-5¶¶9-10,12-13; PX08 at 3¶10; PX16 at 1¶2.

[20] PX04 at 1¶3;PX05 at 3¶7; PX07 at 1-6¶¶3,5,8-10,13,15; PX08 at 1,3¶¶4,10; PX09 at 2,4¶¶5,10; PX11 at 2-3¶¶5,8-9; PX13 at 1-2¶4; PX14 at 5¶11; PX16 at 1¶2; PX20 at 3¶10.

[21] PX01 at 2-3,9-45¶5; PX03 at 1¶2; PX16 at 1¶2.

verification thereof.[22]  In fact, when consumers requested proof of the alleged debts

Defendants generally could not or would not provide it.[23]

## IV.    THIS COURT HAS THE AUTHORITY TO GRANT THE RELIEF

Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), authorizes the FTC to bring

suit in federal district court whenever it has reason to believe that a party "is

violating, or is about to violate, any provision of the law enforced by the Federal

Trade Commission and that enjoining such conduct is in the public interest." The

second proviso of Section 13(b), under which action is brought, provides, "in proper

cases the FTC may seek and, after proper proof, the court may issue, a permanent

injunction." *See FTC v. Gem Merch. Corp.*, 87 F.3d 466, 468 (11th Cir. 1996);

*FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1433 (11th Cir. 1984); *FTC v. U.S.A.*

*Beverages, Inc.*, 2005 U.S. Dist. LEXIS 39042, at *2 (S.D. Fla. Nov. 4, 2005).

By permitting the FTC to bring a permanent injunction action, Congress also

gave the district court power to order whatever preliminary relief may be needed to

make permanent relief possible, including preliminary injunctions, temporary

restraining orders, and other ancillary, equitable relief.  *U.S. Oil & Gas*, 748 F.2d at

---

[22] PX04 at 1¶3; PX07 at 1,3-6¶¶4,8,12,14-15; PX08 at 1¶3; PX10 at 1-2,6¶3; PX11 at 1-2¶3; PX12 at 1¶3; PX19 at 1¶2; PX13 at 2-3¶7; PX15 at 2¶4;PX20 at 4¶15.
[23] PX03 at 2¶4; PX05 at 2¶4; PX07 at 6 ¶16; PX11 at 3¶7; PX12 at 2¶4; PX13 at 2¶5; PX19 at 2-3¶6.

1434). Courts have consistently held that it is appropriate to invoke the remedies of Section 13(b) in cases where there is routine fraud or a straightforward deceptive practice, *U.S. Oil & Gas*, 748 F.2d at 1434 (quoting *Singer*, 668 F.2d at 1113); *See FTC v. IAB Mktg.*, 2014 U.S. App. LEXIS 5679 at *11 (11th Cir. March 27, 2014); *See also Gem Merch. Corp.*, 87 F.3d at 469 to grant the FTC temporary restraining orders and other forms of ancillary relief to halt the deceptive and violative conduct and preserve the status quo. *FTC v. USA Financ.*, LLC, No. 10-212152, 2011 U.S. App. LEXIS 3774, at *13 (11th Cir. Feb. 25, 2011); *U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1432 (11th Cir. 1984); *See FTC v. Tashman*, 318 F.3d 1273, 1278 (11th Cir. 2003); *Gem Merch.*, 87 F.3d at 469, including 11 such orders signed in the Northern District of Georgia. *See* Plaintiff's Volume II for a copy of TROs issued in this District.[24]

## V. ENTRY OF A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION IS APPROPRIATE

---

[24] *FTC v. Pinnacle Mktg*, No. 1:13-cv-03455 (N.D. Ga. Oct. 21, 2013) (phantom debt collection); *FTC v. Charles Dunlevy*, No. 1:11-CV-1226 (N.D. Ga. April 15, 2011); *FTC v. U.S. Work Alliance*, No. 08-2053 (N.D. Ga. July 8, 2008); *FTC v. Direct Connection Consulting, Inc.*, No. 08-1739 (N.D. Ga. May 14, 2008); *FTC v. Holiday Enters., Inc.*, No. 06-2939 (N.D. Ga. Dec. 7, 2006); *FTC v. Prophet 3H, Inc.*, No. 06-1692 (N.D. Ga. July 18, 2006*); FTC v. Stewart Fin. Co.*, No. 03-2648 (N.D. Ga. Sept. 12, 2003); *FTC v. Engle*, No. 03-1072 (N.D. Ga. Apr. 23, 2003); *FTC v. Landers*, No. 00-1582 (N.D. Ga. June 23, 2000); *FTC v. Amn. Urological Corp.*, No. 98-2199 (N.D. Ga. Aug. 3, 1998); and *FTC v. MJS Fin. Servs., Inc.*, No. 97-3087 (N.D. Ga. Oct. 9, 1997).

The standard for awarding preliminary relief in actions brought under Section 13(b) is lower than that required for private litigants.  Courts consider two factors in determining whether to grant preliminary injunctive relief under Section 13(b):  (1) the likelihood of success on the merits and (2) the balance of equities.  *See FTC v. IAB Mktg.*, at *7. (The FTC must show "injunctive relief is in the public interest."). Irreparable injury need not be shown.  *Id.*  Harm to the public interest is presumed in a statutory enforcement action.  *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 346-47 *(9th Cir. 1989)* ; *FTC v. Warner Communications*, 742 F.2d 1156, 1159 (9th Cir. 1984); *FTC v. Career Info. Serv.*, No. 1:96-CV-1464, 1996 U.S. Dist. LEXIS 21207, at *11 (N.D. Ga. June 21, 1996); *See e.g., IAB Mktg.*, at *7.

**A. The FTC has demonstrated a likelihood of success on the merits.**

The compelling evidence submitted clearly demonstrates the substantial likelihood that the FTC will succeed in establishing the Defendants' debt collection scheme violates Section 5 of the FTC Act and the FDCPA.  Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), provides "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful."  The FDCPA seeks to eliminate abusive debt collection practices by debt collectors.

9

### 1. False, Deceptive, or Misleading Representations in Violation of Section 5 of the FTC Act and Section 807 (Counts I & V)

#### a. Violations of Section 5 of the FTC Act

To prove deception under Section 5(a), the FTC must demonstrate that: (1) there is a representation, omission, or practice; (2) that is likely to mislead consumers acting reasonably under the circumstances; and (3) that the representation, omission, or practice is material. *FTC v. USA Fin.*, 2011 U.S. App. LEXIS 3774, at *5 (quoting *FTC v. Tashman*, 318 F.3d 1273 (11th Cir. 2003)); *FTC v. Windward Mktg. Ltd.*, 1997 U.S. Dist. LEXIS 17114, at *27-29 (N.D. Ga. Sept. 30, 1997). In determining whether a practice is likely to mislead, the fact finder must consider the overall, common sense, net impression of the practice on a reasonable consumer. *Tashman*, 318 F.3d at 1283 (citations omitted). Express claims, or deliberately-made claims are presumed material. *FTC v. Holiday Enter., Inc.*, 2008 U.S. Dist. LEXIS 35858, at *17 (N.D. Ga. Feb. 5, 2008). A misrepresentation or practice is material if it involves facts that a reasonable person would consider important in choosing a course of action. *See FTC v. Nat'l Urological Grp, Inc.*, 645 F. Supp. 2d 1167, 1190 (N.D. Ga. 2008), *aff'd* 356 Fed. Appx. 358 (11th Cir. 2009); *Windward Mktg.*, No. 1:96-cv-615, 1997 U.S. Dist. LEXIS 17114, at *27 (N.D. Ga. Sept. 30, 1997). Neither intent to deceive nor evidence that consumers have actually been misled is required for a finding of

10

liability in an FTC action. *Windward Mktg.*, at *28. The FTC need not prove reliance by each consumer misled by Defendants. *FTC v. SlimAmerica, Inc.*, 77 F. Supp. 2d 1263, 1275 (S.D. Fla. 1999). "Requiring proof of subjective reliance by each individual consumer would thwart effective prosecutions of large consumer redress actions and frustrate the statutory goals of [Section 13(b)]." *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 605 (9th Cir. 1993) (citations omitted).

Defendant violates Section 5 of the FTC Act by misrepresenting: (a) the consumer is delinquent on a payday loan or other debt that Defendants have the authority to collect; (b) the consumer has a legal obligation to pay Defendants; (c) Defendants are affiliated with government entities, including law enforcement agencies; (d) Defendants are attorneys or are associated with a law firm; (e) the consumer has committed check fraud, theft by deception or another criminal act; (f) the consumer will be arrested or imprisoned for failing to pay Defendants; and (g) the consumer will lose his or her driver's license for failing to pay Defendants.

First, while making their demands, Defendants misrepresent their authority to collect and the consumers' legal obligation to pay the debt to them. Despite Defendants' claims to the contrary, many of the complaining consumers do not owe the debt. Many either paid their previous debts off prior to Defendants' collection

efforts[25] or never had such debts.[26]  Other complaining consumers actually do owe

debts to the creditor mentioned by Defendants but, in a number of cases, have

confirmed that Defendants were not authorized to collect on the lenders' behalf. [27]

Further, Defendants somehow obtain consumers' sensitive personal information[28]

and because consumers in some instances do have outstanding debts or had debts,

Defendants' knowledge of their personal information, the threats of arrest and other

legal action, or some combination thereof, convince many consumers of

Defendants' authority to collect and their legal obligation to pay the demanded

amounts.[29]  Unfortunately, one consumer learned the hard way.  She paid her

payday loan debt twice, first to Defendants, who had no authority to collect, and

then to the legitimate collector authorized by the payday loan company to collect on

its debt.[30]  As further evidence, the FTC submits a declaration from a payday loan

company stating both Williams Scott and WSA are on the payday loan company's

---

[25] PX03 at 2¶4; PX 07 at 2¶6; PX11 at 4¶10; PX13 at 1-2¶4.

[26] PX05 at 2¶6; PX14 at 1,3¶2-3,7.

[27] PX04 at 2-3¶6; PX09 at3¶8; PX15 at 3¶8; PX16 at 3¶9.

[28] PX06 at 1¶3; PX09 at 2¶4; PX10 at 1-2¶3;PX14 at 2 ¶5.

[29] PX03 at 1-2¶¶3,5; PX04 at 1¶2; PX05 at 1-2¶3; PX06 at 1¶3; PX08 at 1-2¶4; PX09 at 2¶4; PX10 at 2¶4; PX11 at 3-4¶9; PX12 at 2¶¶5,7; PX 14 at 2¶6; PX16 at 3¶7.

[30] PX04 at 2-3¶¶5-7.

list of notorious debt collectors who falsely claim to collect on behalf of the company.[31]

Second, Defendants' claims of affiliation with government entities, including law enforcement agencies are also false. Law enforcement authorities do not arrest or imprison consumers nor do they revoke drivers' licenses for non-payment of private debts. Third, the purported involvement of lawyers in Defendants' collection process is another false claim. Some consumers, for example, communicated with a collector purporting to be a Georgia attorney named "Larry Scott,"[32] or collectors claiming to be with the law firm of Williams, Scott & Associates.[33] In fact, the State Bar of Georgia has confirmed there is no attorney licensed to practice law in Georgia by the name of "Larry Scott" and no established law firm by the name of Williams, Scott and Associates.[34] Attorneys and law firms do not arrest or imprison consumers nor do they revoke drivers' licenses for non-payment of private debts. Fourth, contrary to their threats, Defendants cannot hold consumers liable for criminal acts and or expose them to arrest or other criminal sanctions for failure to pay private debts. In fact, consumers who subsequently contacted their local law

---

[31] PX18 at 2¶¶6-8.

[32] PX10 at 1-2¶2-4; PX14 at 2,4¶5,9.

[33] PX04 at 1¶3; PX05 at 1¶2; PX11 at 1,5¶3,13; PX14 at 1-2¶4; PX19 at 1¶2.
[34] PX17.

enforcement learned there were no pending criminal charges against them as claimed by Defendants.[35] One consumer researched the "county court case number" given by Defendants and found out it was fake.[36]   Finally, Defendants' threats to revoke or suspend consumers' drivers' licenses are completely false and groundless. As private debt collectors, Defendants lack the authority to revoke or suspend a consumer's driver's license, nor can this even be a consequence for non-payment of a private debt.  Such a threat was of particular concern to consumer Josh Gille, who is a truck driver for a major shipping company and was worried he would lose his livelihood after Defendants told him his driver's license was flagged and would be suspended.[37]   In all of these ways Defendants violate Section 5 of the FTC Act, and the FTC is likely to prevail on Count I of its Complaint.

### b. Violations of the FDCPA

The violations alleged under Section 5 of the FTC Act also constitute parallel violations of Section 807 of the FDCPA, 15 U.S.C. §1692e.   Section 807 prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including but not limited:

- Falsely representing the character, amount or legal status of  any debt;

---

[35] PX03 at 3¶8; PX06 at 2-3¶7; PX09 at 3¶9; PX11 at 4¶11.
[36] PX20 at 3 ¶9.
[37] PX09 at 2¶5.

- Falsely representing or implying that a debt collector is affiliated with the United State or any State;
- Falsely representing or implying that an individual is a an attorney or that a communication is from an attorney;
- Representing or implying that nonpayment of a debt will result in arrest or imprisonment;
- Threatening to take an action that is not lawful or is not intended to be taken; and
- Falsely representing or implying a consumer has committed a crime.

As described, *supra*, in Part V.A.1.a, Defendants misrepresent:  (a) the consumer is delinquent on a payday loan or other debt that Defendants have the authority to collect; (b) the consumer has a legal obligation to pay Defendants; (c) Defendants are affiliated with government entities, including law enforcement agencies;(d) Defendants are attorneys or are associated with a law firm; (e) the consumer has committed check fraud, theft by deception or another criminal act; (f) the consumer will be arrested or imprisoned for failing to pay Defendants; and (g) the consumer will lose his or her driver's license for failing to pay Defendants. Thus, Defendants violate Sections 807(1), (2)(A), (3), (4), (5), (7), (10) of the FDCPA, and the FTC is likely to prevail on Count Five of its Complaint.

### 2.   Defendants Engage in Prohibited Communications with Consumers  (Counts II & IV)

Defendants violate several provisions of the FDCPA when they engage in communications with consumers, as described *supra,* in Part III.  Section 805(a) of

the FDCPA prohibits Defendants from calling consumers at places the collector

knows, or should know, are inconvenient, or at work when they know, or should

know, consumers are not allowed to receive such calls.  Thus, by making such calls

that they knew or should have known were inconvenient or prohibited, Defendants

violate Sections 805(a) of the FDCPA, and the FTC is likely to prevail on Count

Two of the Complaint.

Section 806(2) of the FDCPA prohibits debt collectors from using obscene or

profane language or language the natural consequence of which is to abuse the

hearer or reader.   Section 806(5) of the FDCPA prohibits debt collectors from

repeatedly calling consumers. 15 U.S.C. § 1692d(5).  For example, in one instance,

Defendants began calling consumer ten times daily, and after the consumer refused

to pay Defendants, the collector got angry and said "f**k you, f**k you at the

consumer."[38]  In another instance, a consumer truly believed Defendants that she

would go to prison and lose her children if she did not immediately pay them.[39]

Thus, by making repeated phone calls to harass consumers or using abusive or

profane language, as demonstrated by the evidence, Defendants violate Sections

---

[38] PX07 at 4-6 ¶¶13-15.

[39] PX13 at 1-2¶4.

806(2) and 806(5) of the FDCPA, and the FTC is likely to prevail on Count Four of its Complaint.

### 3. Defendants Engage in Prohibited Communications with Third Parties (Counts III)

Section 805(b) of the FDCPA generally bars debt collectors from communicating with third parties other than for the purpose of obtaining a consumer's home or workplace address or telephone number. *See* 15 U.S.C. § 1692c(b).[40] Here, Defendants often improperly contact third parties to communicate about consumers' alleged debt.[41] For example, one collector identified as "Senior Investigator Ace Rogers" told a consumer's mother that he had a warrant for a bad check she had written and to return his call right away.[42] Thus, Defendants violate Section 805(b) of the FDCPA, and the FTC is likely to prevail on Count Two of its Complaint.

### 4. Defendants Fail to Make Required Disclosures in Their Collection Calls or Fail to Provide Consumers with a Validation Notice  (Counts V&VI)

---

[40] *See* 15 U.S.C. § 1692(a) (Congressional finding that abusive, deceptive, and unfair debt collection practices "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy").

[41] PX03 at 1¶2; PX07 at 3¶10; PX12 at 1¶2.
[42] PX03 at 1¶2.

Defendants fail to make two required disclosures of the FDCPA. The first disclosure, found in Section 807(11) of the FDCPA, requires debt collectors to disclose in their initial communications[43] with consumers "that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose." 15 U.S.C. § 1692e(11). Many courts refer to this disclosure as a mini-Miranda warning. *See, e.g., Gibson v. Rosenthal, Stein, & Assocs., LLC*, 2013 U.S. Dist. LEXIS 94216, at *8-9 (N.D. Ga. May 13, 2013); *Franklin v. Dean*, 2013 U.S. Dist. LEXIS 63907, at *5 n.2 (M.D. Ala. May 3, 2013). As stated, *supra*, in Part III, Defendants routinely fail to make these required disclosures in their calls and voice mail messages. This failure furthers consumers' misconception that Defendants' communications are from persons other than debt collectors.

The second required disclosure is found in Section 809(a) of the FDCPA, which requires that unless provided in the initial communication with the consumer, a debt collector must provide the consumer with a written notice containing the amount of the debt and the name of the creditor, a statement about disputing the debt, and a statement that the debt collector will send a verification of the debt if the

---

[43] Courts in this District have determined that voice mail messages are communications under the FDCPA. *See, e.g., Terrell v. Prosperity Fin. Solutions, Inc.*, 2013 U.S. Dist. LEXIS 90024, at *5 (N.D. Ga. Mar. 26, 2013); *Edwards v. Niagra Credit Solutions, Inc.*, 586 F. Supp. 2d 1346, 1359 (N.D. Ga. 2008), *aff'd on other grounds*, 584 F.3d 1350 (11th Cir. 2009).

consumer disputes the debt in writing. *See* 15 U.S.C. § 1692g(a).[44] Consumers who do not receive the statutorily-required notice may never learn of their right to dispute or request verification of the alleged debt or its amount, age, or existence. Here, Defendants do not provide required notices to consumers[45] and give spurious reasons to consumers why they would not provide it if a consumer questioned the alleged debts.[46] For example, one consumer was told she should have kept better paperwork.[47]

Thus, Defendants violate Sections 807(11) and 809(a) of the FDCPA, and the FTC is likely to prevail on Counts Five and Six of its Complaint.

## B. The balance of equities mandates a temporary restraining order and preliminary injunction

The balance of equities mandates temporary and preliminary relief in this case. Where, as in the instant matter, public and private equities are at issue, public equities far outweigh private equities. *World Wide Factors*, 882 F.2d at 347 (citations omitted). Defendants "can have no vested interest in a business activity

---

[44] The provision is intended to minimize instances of mistaken identity of a debtor or mistakes over the amount or existence of a debt. S. Rep. No. 382, 95th Cong., 1st Sess. 4, at 4, *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696.

[45] PX03 at 2¶4; PX04 at 2¶4; PX05 at 2¶5; PX06 at 1¶3; PX07 at 6¶16; PX08 at 1¶4; PX09 at 4¶11; PX10 at1-2,6¶3; PX11 at 3¶7; PX12 at 2¶4; PX13 at 2-3¶7; PX14 at 1-3¶¶4,6,8; PX15 at 2¶5; PX19 at 2-3¶6.

[46] PX03 at 2¶4; PX05 at 2¶4; PX07 at 6¶16; PX11 at 3¶7; PX19 at 2-3¶6.

[47] PX05 at 2¶4.

found to be illegal. *U.S. v. Diapulse Corp. of Am.*, 457 F.2d 25, 29 (2d Cir. 1972);

*U.S. v. Blue Ribbon Smoked Fish,* 179 F.Supp.2d 30, 50 (E.D.N.Y. 2001).

Defendant's past conduct "gives rise to the inference that there is a reasonable

likelihood of future violations of the FTC Act. *CFTC v. Hunt*, 591 F.2d 1211, 1220

(7th Cir. 1979)("Once a violation is demonstrated, the moving party need only show

that there is some reasonable likelihood of future violations."); *United States CFTC*

*v. Hunter Wise Commodities, LLC*, 2013 U.S. Dist. LEXIS 35770 at *35 (S.D. Fla.

2013). Defendants are systematically threatening consumers with arrest warrants,

jail, and driver's license suspension to extract money from consumers for payment

of debts that they do not owe or for which Defendants have no authority to collect.

When enacting Section 13(b), Congress intended to serve the public interest by

protecting victims from the effects of deceptive trade practices as quickly as

possible. *See FTC v. World Travel Vacation Brokers,* 861 F.2d 1020, 1028 (7th Cir.

1988); *See also FTC v. Southwest Sunsites, Inc.*, 665 F.2d 711, 719 (5th Cir. 1982).

### C. The Individual Defendant Is Liable for Injunctive and Equitable Monetary Relief

In addition to the Corporate Defendants, Individual Defendant John Williams

is liable for injunctive and monetary relief for law violations committed by

Corporate Defendants. To obtain an injunction against an individual, the FTC must

show that the individual "participated directly in the [deceptive] practices or acts or

had the authority to control them." *IAB Mktg.*, at *8; (quoting *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 573 (7th Cir. 1989) ); *see also Gem Merch. Corp.*, 87 F.3d at 470. Authority to control, may be established by "active involvement in business affairs and the making of corporate policy" and by evidence that "the individual had some knowledge of the practices." *IAB Mktg*, at *8. In general, an individual's status as a corporate officer gives rise to a presumption of liability to control a small, closely-held corporation. *Standard Educators, Inc. v. FTC*, 475 F.2d 401, 403 (D.C. Cir. 1973). More particularly, assuming the duties of a corporate officer is probative of an individual's participation or authority. *FTC v. Amy Travel Serv. Inc.*, 875 F.2d 564, 573 (7th Cir. 1989); *FTC v. Five-Star Auto Club*, 97 F. Supp. 2d 502, 538 *(S.D.N.Y. 2000)*. Bank signatory authority or acquiring services on behalf of a corporation also evidences authority to control. *See FTC v. USA Fin., LLC*, 415 Fed. Appx. 970, 974-75 (11th Cir. Feb. 25, 2011).

"The FTC must establish that "the individual had some knowledge of the [deceptive] practices."" *IAB Marketing*, at *8 (quoting A*my Travel*, 875 F.2d at 573). An individual may be held liable for monetary redress for corporate practices if the individual had, or should have had, knowledge or awareness of the corporate defendants' misrepresentations. *Gem Merch. Corp.*, 87 F.3d at 470. This knowledge element, however, need not rise to the level of subjective intent to defraud consumers. *Windward Mktg.*, 1997 U.S. Dist. LEXIS 17114 at *39. Instead, the FTC need only demonstrate that the individual had actual knowledge of material misrepresentations, reckless indifference to the truth or falsity of such representations, or an awareness of a high probability of fraud, coupled with the intentional avoidance of the truth. *FTC v. Atlantex Assoc.*, 1987 U.S. Dist. LEXIS 10911, at *25-26 (S.D. Fla. Nov. 25, 1987); *see also FTC v. Affordable Media, LLC*,

179 F.3d 1228, 1234 (9th Cir. 1999).  Participation in corporate affairs is probative

of knowledge.  *Windward Mktg.*, at \*39.  As discussed above, the Defendant John

Williams is the organizer, a manager member and the registered agent Williams

Scott and WSA.[48]  He has held himself out as the CEO of Williams Scott.[49] He has

signatory authority over the Corporate Defendants' financial accounts.

Furthermore, the collection practices of Corporate Defendants have attracted

the attention of several states and the BBB, which shows he has or should  have

knowledge of Corporate Defendants' unlawful collection practices. In 2013, in

response to consumer complaints about Defendants, the State of Georgia personally

served a civil investigative demand ("CID") on John Williams as president and

registered agent of Williams Scott & Associates, LLC. [50] Shortly after being served

with the CID, Defendant Williams removed his name as manager of Williams Scott.

Then a week later he organized WSA, LLC and became one of its

manager/member.[51]  Additionally, both the States of Nevada and Colorado recently

served Cease & Desist Orders against WSA, LLC, for operating an unlicensed

---

[48] PX01 at 3-4,47-65¶6.

[49] PX01 at 4-5,86,99¶8.

[50] PX02 at 3¶11.

[51] PX01 at 3-4,50,58-60¶¶6-7; PX02 at 6¶21.

collection agency.[52]  John Williams as one of the managing members of WSA, LLC

and its registered agent, therefore either knew or should have known about each of

these state actions.  Additionally, the Better Business Bureau would have notified

Defendants of over 70 consumer complaints about their collection practices.[53]  John

Williams registered for the postal box where BBB complaints were sent[54] so it can

be presumed he was aware of such complaints.  In fact, on at least one occasion, he

responded to the consumer's complaint.[55]

There can be little doubt that the John Williams has authority to control and

direct or constructive knowledge of Defendants' wrongful acts.  Accordingly, it is

appropriate to enjoin him from violating the FTC Act and the FDCPA and to hold

him liable for consumer redress or other monetary relief in connection with

Defendants' activities.

## VI.    A TRO WITH INJUNCTIVE AND OTHER RELIEF IS NECESSARY

The proposed TRO simply orders Defendants to obey Section 5(a) of the FTC

Act and the FDCPA provisions.  This relief would serve the public interest by

stopping Defendants' deceptive scheme and preventing further harm to the public.

_____

[52] PX01 at 5-6¶¶11-12.

[53] PX01 at 7¶13.

[54] PX01 at 5,113¶9.

[55] PX01 at 7,129¶13.

23

The FTC also asks this Court for an asset freeze on all of Defendants' assets. An asset freeze is within the district court's equitable powers. *IAB Marketing*, at *11 ("[A] district court may order preliminary relief, including an asset freeze, that may be needed to make permanent relief possible.")(quoting *FTC v. Gem Merch. Corp.*, 87 F.3d 466, 469 (11th Cir. 1996)); *U.S. Oil & Gas,* 748 F.2d at 1433-34.

A temporary freeze of Defendants' assets is appropriate here to preserve the status quo, ensure that funds do not disappear during the course of this action, and preserve Defendants' assets for final relief. The FTC's burden of proof in the asset-freeze context is relatively light. *IAB Marketing*, at *11; *SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 735 (11th Cir.2005) (per curium) (only a "reasonable approximation of a defendant's ill-gotten gains" is required for an asset freeze and that "[e]xactitude is not a requirement). As previously stated, consumers have individually paid hundreds and thousands of dollars for debts that they either do not owe or that Defendants have no authority to collect.[56]  Defendants have netted an estimated $4 million in revenue since 2010.[57]

---

[56] PX01 at 29-47¶5; PX03 at 2-3¶5-7; PX04 at 2¶5; PX05 at 3-4¶9; PX06 at 2¶5; PX08 at 2¶¶5-8; PX09 at 2¶5; PX10 at 2-3¶¶4-5; PX11 at 3-4¶9; PX12 at 2-3¶¶7-8; PX14 at 2-3¶6; PX15 at 2-3¶6; PX16 at 3¶7; PX19 at 3-5¶¶7-10.
[57] PX01 at 4-5¶8.

The proposed TRO should be issued *ex parte* because Defendants' operation, is permeated by deception and unlawful activity.  Defendants actively conceal their identities as debt collectors and continue their unlawful practices unabated.  Also, Defendant John Williams demonstrates a proclivity to engage in dishonest behavior. *See* Rule 65 Certification of Counsel Robin L. Rock.  The possibility of a large monetary judgment depriving Defendants of the fruits of their illicit labor provides Defendants with ample incentive to conceal or dissipate otherwise recoverable assets.  Lastly, the appointment of a receiver is a sound equitable remedy in cases involving deception. *See U.S. Oil & Gas*, 748 F.2d at 1432.  The FTC's recommendation for receiver is submitted simultaneously with the instant motion.

## VII.  CONCLUSION

For all the above-stated reasons, Plaintiff FTC moves this Court, pursuant to Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b), for a temporary restraining order.

Dated:  May 27, 2014                    Respectfully submitted,

                                        JONATHAN E. NUECHTERLEIN
                                        General Counsel

                                        ROBIN L. ROCK
                                        Ga. Bar No. 629532

                                        25

MARCELA C. MATEO
Ga. Bar No. 397722
Federal Trade Commission
Southeast Region
225 Peachtree Street, N.E., Suite 1500
Atlanta, GA 30303
Telephone:  404-656-1368 (Rock)
                    404-656-1361 (Mateo)
Facsimile:   404-656-1379
Email:  rrock@ftc.gov; mateo@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

## Certification of Compliance with Local Rules 5.1.C and 7.1.D

As required by Local Rule 7.1.D, counsel certifies that this brief has been prepared in the font and point selections, Times New Roman (14 point) in compliance with Local Rule 5.1.C.

ROBIN L. ROCK
Ga. Bar No. 629532
Federal Trade Commission
Southeast Region
225 Peachtree Street, N.E., Suite 1500
Atlanta, GA 30303
Telephone:  404-656-1368 (Rock)
Facsimile:   404-656-1379
Email:  rrock@ftc.gov
Attorney for Plaintiff
FEDERAL TRADE COMMISSION